IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **NIGHTMIST IP LLC,**<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**ACER AMERICA CORPORATION,**<br><br>　　　　Defendant. | Civil Action No.: 6:22-cv-00705<br><br>**TRIAL BY JURY DEMANDED** |

**COMPLAINT FOR INFRINGEMENT OF PATENT**

Now comes Plaintiff, Nightmist IP LLC ("Plaintiff" or "Nightmist"), by and through undersigned counsel, and respectfully alleges, states, and prays as follows:

**NATURE OF THE ACTION**

1. This is an action for patent infringement under the Patent Laws of the United States, Title 35 United States Code ("U.S.C.") to prevent and enjoin Defendant Acer America Corporation (hereinafter "Defendant"), from infringing and profiting, in an illegal and unauthorized manner, and without authorization and/or consent from Plaintiff from U.S. Patent No. 8,902,179 ("the '179 Patent" or the "Patent-in-Suit"), which is attached hereto as Exhibit A and incorporated herein by reference, and pursuant to 35 U.S.C. §271, and to recover damages, attorney's fees, and costs.

**THE PARTIES**

2. Plaintiff is a Texas limited liability company with its principal place of business at 2100 14th Street, Suite 107, PMB 1045, Plano, TX 75074.

3. Upon information and belief, Defendant is a corporation organized under the laws of California. Upon further information and belief, Defendant owns, operates, or maintains a physical presence in this judicial district at 1394 Eberhardt Road, Temple, Texas 76504. Upon

information and belief, Defendant may be served with process c/o CT Corporation System, 1999 Bryan Street – Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

4. This is an action for patent infringement in violation of the Patent Act of the United States, 35 U.S.C. §§1 *et seq*.

5. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338(a).

6. This Court has personal jurisdiction over Defendant by virtue of its systematic and continuous contacts with this jurisdiction and its residence in this District, as well as because of the injury to Plaintiff, and the cause of action Plaintiff has risen in this District, as alleged herein.

7. Defendant is subject to this Court's specific and general personal jurisdiction pursuant to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in this forum state and in this judicial District; and (iii) being incorporated in this District.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. §1400(b) because Defendant resides in this District under the Supreme Court's opinion in *TC Heartland v. Kraft Foods Group Brands LLC,* 137 S. Ct. 1514 (2017) through its incorporation, and regular and established place of business in this District.

## FACTUAL ALLEGATIONS

9. On December 2, 2014, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '179 Patent, entitled "METHOD AND DEVICE FOR INPUTTING

TEXT USING A TOUCH SCREEN" after a full and fair examination. The '179 Patent is attached hereto as Exhibit A and incorporated herein as if fully rewritten.

10. Plaintiff is presently the owner of the '179 Patent, having received all right, title and interest in and to the '179 Patent from the previous assignee of record. Plaintiff possesses all rights of recovery under the '179 Patent, including the exclusive right to recover for past infringement.

11. To the extent required, Plaintiff has complied with all marking requirements under 35 U.S.C. § 287.

12. The invention claimed in the '179 Patent comprises a method for inputting text in a mobile device using a touch screen by inputting a code into the mobile device among candidate codes. Ex. A at Col.12:64-66.

13. Claim 1 of the '179 Patent recites a non-abstract method for inputting text in a mobile device using a touch screen by inputting a code into the mobile device among candidate codes.

14. Claim 1 of the '179 Patent provides the practical application of a method for inputting text in a mobile device using a touch screen by inputting a code into the mobile device among candidate codes.

15. Claim 1 of the '179 Patent provides an inventive step for a method for inputting text in a mobile device using a touch screen by inputting a code into the mobile device among candidate codes to address the deficiencies and needs identified in the Background section of the '179 Patent. Ex. A at Col.1:18-45.

16. Claim 1 of the '179 Patent states:

> "1. A method for inputting text in a mobile device using a touch screen by inputting a code into the mobile device among candidate codes, wherein the candidate codes are divided into a plurality of code series, the method comprises:

>>providing in the touch screen at least three first flick areas, which are located in a ⅓ side area at a side of a first lateral side of the touch screen;
>
>>providing in the touch screen at least three second flick areas, which are located in a ⅓ side area at a side of a second lateral side of the touch screen at opposite side to the first lateral side,
>
>>wherein each of the plurality of code series is associated with one of the flick areas among the first and second flick areas, each of the codes belonging to a code series is associated with a flick action at the flick area, and a plurality of fast moves to different directions at a flick area are respectively associated with the codes associated with the flick area as flick actions at the flick area;
>
>>detecting a flick action at one flick area among the first flick areas and the second flick areas; and
>
>>determining a code to be inputted into the mobile device from a combination 20 of the flicked flick area and the flick action." Ex. A at Col.12:64-13:19.

17. Claim 4 of the '179 Patent recites a non-abstract mobile device having a touch screen for inputting text in a mobile device using a touch screen by inputting a code into the mobile device among candidate codes.

18. Claim 4 of the '179 Patent provides a practical application of a mobile device having a touch screen for inputting text in a mobile device using a touch screen by inputting a code into the mobile device among candidate codes.

19. Claim 4 of the '179 Patent provides an inventive step for a mobile device having a touch screen for inputting text in a mobile device using a touch screen by inputting a code into the mobile device among candidate codes to address the deficiencies and needs identified in the Background section of the '179 Patent. Ex. A at Col.1:18-45.

20. Claim 4 of the '179 Patent states:

>"4. A mobile device having a touch screen and a function to input text by inputting a code into the mobile device among candidate codes, wherein the candidate codes are divided into a plurality of code series, the mobile device includes a program that carries out steps of:
>
>>providing in the touch screen at least three first flick areas, which are located in a ⅓ side area at a side of a first lateral side of the touch screen;

>   providing in the touch screen at least three second flick areas, which are located in a ⅓ side area at a side of a second lateral side of the touch screen at opposite side to the first lateral side,
>   wherein each of the plurality of code series is associated with one of the flick areas among the first and second flick areas, each of the codes belonging to a code series is associated with a flick action at the flick area, and a plurality of fast moves to different directions at a flick area are respectively associated with the codes associated with the flick area as flick actions at the flick area;
>   detecting a flick action at one flick area among the first flick areas and the second flick areas; and
>   determining a code to be inputted into the mobile device from a combination of the flicked flick area and the flick action." Ex. A at Col.13:30-14:19.

21. As identified in the '179 Patent, prior art systems had technological faults. Ex. A at Col.1:18-41.

22. More particularly, the '179 Patent identifies that the prior art provided conventional methods for inputting text using a touch screen include "toggle" and "flick". Ex. A at Col. 1:21-22.

23. The toggle method is relatively easy to master but relatively slow to input text. Ex. A at Col.1:23-24. In the toggle method, the user touches a first-touching area, that is, a sectioned area in the touch screen, for determining a character series, such as a series including A, B and C. Ex. A at Col.1:24-27. After that, the user touches the sectioned area one to several times or not touches any area to determine which character to input. The flick method allows faster text input than the toggle method if used by a user who has mastered it. Ex. A at Col.1:29-31. In the flick method, the user touches one of flick areas for determining a character series, such as a series including A, B and C. Ex. A at Col.1:31-34. Then, the device displays an assist display. Ex. A at Col.1:34. Finally, the user performs a flick action, which is an action that moves the finger or tap the touch screen with the finger. Ex. A at Col.1:34-36. The flick action corresponds to a character. If the user performs an up flick action. Ex. A at Col.1:36-38.

24. However, when inputting text using the above methods, the user needs to look at the screen for finding the area (flick area) to touch first. Ex. A at Col.1:39-41.

25. To address this specific technical problem, Claims 1 and 4 in the '179 Patent comprise a non-abstract method and device, respectively, for inputting text in a mobile device using a touch screen by inputting a code into the mobile device among candidate codes, wherein the candidate codes are divided into a plurality of code series. Ex. A at Col.12:64-13:19.

26. Claims 1 and 4 of the '179 Patent are a practical application and inventive step of technology that address the specific computer-centric problem of the extra requirements for a user when inputting text into a touch screen.

27. Specifically, to deal with the specific computer-centric problem of the extra requirements for a user when inputting text into a touch screen, Claims 1 and 4 in the '179 Patent require (a) providing in the touch screen at least three first flick areas, which are located in a ⅓ side area at a side of a first lateral side of the touch screen; (b) providing in the touch screen at least three second flick areas, which are located in a ⅓ side area at a side of a second lateral side of the touch screen at opposite side to the first lateral side, (c) wherein each of the plurality of code series is associated with one of the flick areas among the first and second flick areas, each of the codes belonging to a code series is associated with a flick action at the flick area, and a plurality of fast moves to different directions at a flick area are respectively associated with the codes associated with the flick area as flick actions at the flick area; (d) detecting a flick action at one flick area among the first flick areas and the second flick areas; and (e) determining a code to be inputted into the mobile device from a combination of the flicked flick area and the flick action.

28. These specific elements (i.e., a-e identified in ¶27), <u>as combined</u>, accomplish the desired result improving user functionality and operation of a computer having a touch screen.

Further, these specific elements also accomplish these desired results to overcome the then existing problems in the relevant field of computer communication systems. *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018) (holding that improving computer security can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem). See also *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018); *Core Wireless Licensing v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299 (Fed. Cir. 2018); *Uniloc USA, Inc. v. LG Electronics USA, Inc.*, 957 F.3d 1303 (Fed. Cir. April 30, 2020).

29. Claims need not articulate the advantages of the claimed combinations to be eligible. *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1309 (Fed. Cir. 2020).

30. These specific elements of Claims 1 and 4 of the '179 Patent (i.e., a-e identified in ¶27)) were an unconventional arrangement of elements because the prior art methodologies would simply use flick actions or toggle actions that required tedious actions for the use.

31. Claims 1 and 4 of the '179 Patent were able to unconventionally generate a method for inputting data by a user to a computer using a touchscreen. *Cellspin Soft, Inc. v. FitBit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019).

32. Further, regarding the specific non-conventional and non-generic arrangements of known, conventional pieces to overcome an existing problem, Claims 1 and 4 in the '179 Patent provide for inputting data by a user to a computer using a touchscreen that would not preempt all ways of inputting text because the claims are based on (a) providing in the touch screen at least three first flick areas; (b)providing in the touch screen at least three second flick areas, (c) wherein each of the plurality of code series is associated with one of the flick areas among the first and second flick areas, each of the codes belonging to a code series is associated with a flick action at

the flick area, and a plurality of fast moves to different directions at a flick area are respectively associated with the codes associated with the flick area as flick actions at the flick area; (d) detecting a flick action at one flick area among the first flick areas and the second flick areas; and (e) determining a code to be inputted into the mobile device from a combination of the flicked flick area and the flick action, any of which could be removed or performed differently to permit a method of gaining access to network in a different way. *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016); See also *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014).

33. Based on the allegations, it must be accepted as true at this stage, that Claims 1 and 4 of the '179 Patent recite a specific, plausibly inventive way of inputting data by a user to a computer using a touchscreen using specific protocols rather than the general idea of interacting with a touchscreen. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019), *cert. denied sub nom. Garmin USA, Inc. v. Cellspin Soft, Inc.*, 140 S. Ct. 907, 205 L. Ed. 2d 459 (2020).

34. The claims of the '179 Patent are not directed to an abstract idea and are therefore eligible for patent protection because the claims: (i) are directed to improving a computer functionality; and provide a specific solution to the computer network problem created by previous techniques. *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278 (Fed. Cir. 2020).

35. The claims of the '179 Patent are associated with certain activities and are not directed to an abstract idea and are therefore eligible for patent protection because the claims detail how the invention solves the technological problem of identifying previous flaws in a computer or networked environment. Namely, the specification explains that previously known techniques could not solve the identified shortcomings and the claims focus on the specific improvement of a more granular, nuanced, and useful inputting data by a user to a computer using a touchscreen.

*Packet Intelligence LLC v. NetScout Systems, Inc*. 965 F.3d 1299 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2521 (2021).

36. All claims of the '179 Patent are eligible inasmuch as they are directed to a specific improvement that solve a technical problem that was not conventional. *CosmoKey Solutions GMBH & Co. KG v. Duo Security LLC*, 15 F.4th 1091, 1098-99 (Fed. Cir. 2021); and *CardioNet, LLC v. InfoBionic, Inc*. 955 F.3d 1358 (Fed. Cir. 2020).

37. Alternatively, there is at least a question of fact that must survive the pleading stage as to whether these specific elements of Claims 1 and 4 of the '179 Patent (i.e., a-e identified in ¶23), and the additional dependent claims, were an unconventional arrangement of elements. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018) See also *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 911, 205 L. Ed. 2d 454 (2020).

38. Defendant commercializes, inter alia, methods that perform all the steps recited in at least one claim of the '179 Patent.

39. More particularly, Defendant commercializes, inter alia, methods that perform all the steps recited in Claim 1 of the '179 Patent. Specifically, Defendant makes, uses, sells, offers for sale, or imports a device that performs the method that encompasses that which is covered by Claim 1 of the '179 Patent.

40. Defendant makes, uses, sells, offers for sale, or imports a device that encompasses that which is covered by Claim 4 of the '179 Patent.

## DEFENDANT'S PRODUCT(S)

41.     Defendant offers solutions, such as the "Acer Spin 5 Laptop" computer product (the "Accused Product")[1], that is a device that allows inputting a code into the mobile device among candidate codes, wherein the candidate codes are divided into a plurality of code series.  A non-limiting and exemplary claim chart comparing the Accused Product of Claim 4 of the '179 Patent is attached hereto as Exhibit B and is incorporated herein as if fully rewritten.

42.     As recited in Claim 4, the Accused Product is a mobile device having a touch screen and a function to input text by inputting a code into the mobile device among candidate codes, wherein the candidate codes are divided into a plurality of code series.  See Ex. B.

43.     As recited in one element of Claim 4, the Accused Product, at least in internal testing and usage, performs providing in the touch screen at least three first flick areas, which are located in a ⅓ side area at a side of a first lateral side of the touch screen. See Ex. B.

44.     As recited in one element of Claim 4, the Accused Product, at least in internal testing and usage, performs providing in the touch screen at least three second flick areas, which are located in a ⅓ side area at a side of a second lateral side of the touch screen at opposite side to the first lateral side. See Ex. B.

45.     As recited in one element of Claim 4, the Accused Product, at least in internal testing and usage, includes wherein each of the plurality of code series is associated with one of the flick areas among the first and second flick areas, each of the codes belonging to a code series is associated with a flick action at the flick area, and a plurality of fast moves to different directions at a flick area are respectively associated with the codes associated with the flick area as flick actions at the flick area. See Ex. B.

---

[1] The Accused Product is just one of the products provided by Defendant, and Plaintiff's investigation is on-going to additional products to be included as an Accused Product that may be added at a later date.

46. As recited in one element of Claim 4, the Accused Product, at least in internal testing and usage, performs detecting a flick action at one flick area among the first flick areas and the second flick areas. See Ex. B.

47. As recited in one element of Claim 4, the Accused Product, at least in internal testing and usage, performs determining a code to be inputted into the mobile device from a combination of the flicked flick area and the flick action. See Ex. B.

48. The elements described in the preceding paragraphs are covered by at least Claim 4 of the '179 Patent. Thus, Defendant's use, manufacture, or sale of the Accused Product is enabled by the '179 Patent.

49. For these same reasons, the Accused Product performs the method of Claim 1 of the '179 patent.

50. As recited in one element of Claim 1, the Accused Product, at least in internal testing and usage, performs providing in the touch screen at least three first flick areas, which are located in a ⅓ side area at a side of a first lateral side of the touch screen.

51. As recited in one element of Claim 1, the Accused Product, at least in internal testing and usage, performs providing in the touch screen at least three second flick areas, which are located in a ⅓ side area at a side of a second lateral side of the touch screen at opposite side to the first lateral side.

52. As recited in one element of Claim 1, the Accused Product, at least in internal testing and usage, includes wherein each of the plurality of code series is associated with one of the flick areas among the first and second flick areas, each of the codes belonging to a code series is associated with a flick action at the flick area, and a plurality of fast moves to different directions

at a flick area are respectively associated with the codes associated with the flick area as flick actions at the flick area.

53. As recited in one element of Claim 1, the Accused Product, at least in internal testing and usage, performs detecting a flick action at one flick area among the first flick areas and the second flick areas.

54. As recited in one element of Claim 1, the Accused Product, at least in internal testing and usage, performs determining a code to be inputted into the mobile device from a combination of the flicked flick area and the flick action.

## INFRINGEMENT OF THE PATENT-IN-SUIT

55. Plaintiff realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs

56. In violation of 35 U.S.C. § 271, Defendant is now, and has been directly infringing, either literally or under the doctrine of equivalents, the '179 Patent.

57. Defendant has had knowledge of infringement of the '179 Patent at least as of the service of the present Complaint.

58. **Direct Infringement.** Defendant has directly infringed and continues to directly infringe at least one claim of the '179 Patent by making, using, at least through internal testing or otherwise, offering to sell, selling and/or importing, without limitation, the Accused Product without authority in the United States, and will continue to do so unless enjoined by this Court. As a direct and proximate result of Defendant's direct infringement of the '179 Patent, Plaintiff has been and continues to be damaged.

59. **Induced Infringement.** Defendant will continue to induce others to infringe the '179 Patent by encouraging infringement, knowing that the acts Defendant induced constituted

patent infringement, and its encouraging acts actually resulted in direct patent infringement either literally or under the doctrine of equivalents.

60. **Contributory Infringement**. Defendant actively, knowingly, and intentionally continues to materially contribute to their own customers' infringement of the '179 Patent, literally or by the doctrine of equivalents, by selling the Accused Product to their customers for use in end-user products in a manner that infringes one or more claims of the '179 Patent. Moreover, the Accused Product is not a staple article of commerce suitable for substantial non-infringing use.

61. By engaging in the conduct described herein, Defendant has injured Plaintiff and is thus liable for infringement of the '179 Patent, pursuant to 35 U.S.C. § 271.

62. Defendant has committed these acts of infringement without license or authorization.

63. As a result of Defendant's infringement of the '179 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

64. Plaintiff will continue to suffer damages in the future unless Defendant's infringing activities are enjoined by this Court. As such, Plaintiff is entitled to compensation for any continuing and/or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement.

65. Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contention or claim construction purposes by the claim charts that it provides with this Complaint. The claim chart depicted in Exhibit B is intended to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil

Procedure and does not represent Plaintiff's preliminary or final infringement contentions or preliminary or final claim construction positions.

## DEMAND FOR JURY TRIAL

66.     Plaintiff demands a trial by jury of any and all causes of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a.  That Defendant be adjudged to have directly infringed the '179 Patent either literally or under the doctrine of equivalents;

b.  An accounting of all infringing sales and damages including, but not limited to, those sales and damages not presented at trial;

c.  That Defendant, its officers, directors, agents, servants, employees, attorneys, affiliates, divisions, branches, parents, and those persons in active concert or participation with any of them, be permanently restrained and enjoined from directly infringing the '179 Patent;

d.  An award of damages pursuant to 35 U.S.C. §284 sufficient to compensate Plaintiff for the Defendant's past infringement and any continuing or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement, including compensatory damages;

e.  An assessment of pre-judgment and post-judgment interest and costs against Defendant, together with an award of such interest and costs, in accordance with 35 U.S.C. §284;

f.  That Defendant be directed to pay enhanced damages, including Plaintiff's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. §285; and

g.  That Plaintiff be granted such other and further relief as this Court may deem just and proper.

Dated: June 30, 2022

Respectfully submitted,

SAND, SEBOLT & WERNOW CO., LPA

*/s/ Howard L. Wernow*
Howard L. Wernow (Bar No. 0089019)
Aegis Tower – Suite 1100
4940 Munson Street NW
Canton, Ohio 44718
Telephone: (330) 244-1174
Facsimile: (330) 244-1173
Email: howard.wernow@sswip.com

ATTORNEY FOR PLAINTIFF